# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| JEFFERY L. STUMP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. N17M-09-027 CLS |
| v. | ) | |
| | ) | |
| TOWN OF MIDDLETOWN, | ) | |
| MAYOR KENNETH L. | ) | |
| BRANNER, CHIEF MICHAEL | ) | |
| IGLIO, and DELAWARE | ) | |
| CRIMINAL JUSTICE | ) | |
| COUNCIL, an agency of the State | ) | |
| of Delaware | ) | |
| | ) | |
| Defendants. | ) | |

Date Submitted: March 25, 2019
Date Decided:  April 8, 2019

On Plaintiff's Petition for Writ of Mandamus.

## OPINION

John S. Malik, Esquire, The Law Office of John S. Malik, 100 East 14th Street, Wilmington, Delaware, 19801.  Attorney for Plaintiff.

Rae M. Mims, Esquire, Department of Justice, 102 W. Water Street, Dover, Delaware, 19904.  Deputy Attorney General for Criminal Justice Council

Scott G. Wilcox, Esquire, Moore & Rutt, 1007 N. Orange Street, Suite 437, Wilmington, Delaware, 19801. Attorney for Defendants Town of Middletown, Mayor Kenneth L. Branner, and Chief Michael Iglio.

## Findings of Fact

In the Fall of 2015, an internal affairs investigation was initiated by the Town of Middletown Police Department related to an incident that occurred on September 28, 2015, involving Master Sergeant Jeffery Stump.[1] Following their standard procedure, Sergeant Stump was provided notice of the investigation, the allegations he was facing, and the disciplinary sanctions that could be imposed as a result of the outcome of the investigation. The investigation was carried out by then Captain Iglio, who at the time was an Internal Affairs officer.

On November 6, 2015, as part of the investigation, Sergeant Stump was interviewed by Captain Iglio. Also present at the interview was Lieutenant Texter and Counsel for Sergeant Stump. The interview was recorded in compliance with 11 *Del. C.* § 9200 (c) (7).

At the end of the investigation, Captain Iglio reached the conclusion that four of the allegations against Sergeant Stump were sustained. A fifth allegation was not sustained, and Sergeant Stump was exonerated in relation to a sixth allegation. These conclusions were reviewed by the town solicitor and then presented to then Chief of Police Yeager. At the time, imposition of discipline based on the findings of internal investigations was up to the discretion of the Chief of Police. By letter dated January

---

[1] For the purposes of the Court's decision, the actions giving rise to the investigation are irrelevant.

7, 2016, Sergeant Stump was notified that he was to be disciplined. The discipline imposed was effective retroactive to January 4, 2016, including a demotion two ranks to Master Corporal, a corresponding reduction in pay, and one year of probation. This notice is addressed from the Mayor and Council of Middletown, signed by Mayor Branner. Sergeant Stump was made aware of this decision after working at least part of a shift on January 8, 2016. Sergeant Stump acknowledged receipt of this notice, signing the letter on the same day.

On January 20, 2016, Counsel for Sergeant Stump notified Captain Iglio that his client wished to appeal the findings and discipline imposed following the internal affairs investigation. Correspondence from Counsel indicates they understood the grievance procedure to be pursuant to Section 6.2(B)(2)(a) and (b) of the Town's Personnel Policy Manual, and an ultimate appeal to the Mayor.

As a result of the request for an appeal, Sergeant Stump and his Counsel attended a meeting with Mayor Branner, and the attorney for the Mayor. No members of the Town Council or Police Department were present for this meeting. Following the meeting Sergeant Stump was notified by letter dated December 6, 2016, that the Mayor and Council heard the appeal, and agreed that the penalty they placed upon Stump "may have been too severe." The letter served as notice that

3

Sergeant Stump was to be reinstated one rank to Sergeant, and provided back pay from January 6, 2016 to December 5, 2016.[2]

On December 14, 2016, Sergeant Stump notified the Mayor via email that he wished to appeal the Mayor and Council's determination "to the next step." The Mayor's response from the following day stated "[The Mayor] heard your appeal, as stated in the MOU and Town Policy manual, and made a recommendation to Council which was accepted." The response further states that the Mayor and Council's decision was final, and that there was no "next step" in the appeals process.

On December 28, 2016, Sergeant Stump's attorney requested a hearing via trial board to be convened under the auspices of the Criminal Justice Council (CJC). In response, now acting Chief Iglio sent a letter to the CJC notifying the Council of the Collective Bargaining Agreement (CBA) between the Town and the Middletown Police Department Fraternal Order of Police Lodge #20. Acting Chief Iglio provided an abbreviated statement of the matter, and represented that Sergeant Stump initiated and exhausted the grievance procedure as outlined in the personnel policy manual.

Based on the facts presented by the parties, the CJC determined Sergeant Stump was not entitled to a hearing under the auspices of the CJC. The Letter from

---

[2] The scheduling of the appeal with the Mayor was delayed due to Stump taking medical leave during 2016.

CJC Executive Director Kervick shows there was a misapprehension on the part of the CJC in regards to the process afforded Sergeant Stump. As of the date of the letter it was understood by the CJC that "the Middletown Police Department held a hearing concerning Sergeant Stump's demotion […] under its grievance procedure articulated within the Department's collective bargaining agreement."[3] The letter continues "Sergeant Stump's grievance went through the successive steps of the agreement" indicating the CJC believed Sergeant Stump was afforded the opportunity to present his case to the Mayor and City Council.[4]

Following the denial of a trial board hearing before the CJC, Stump petitioned this Court for a Writ of Mandamus, demanding a hearing consistent with the requirements of Law-Enforcement Officers' Bill of Rights (LEOBOR).

At no time throughout this process was Sergeant Stump offered a hearing as commonly understood by the Courts and various administrative agencies of this State. The Process afforded to Sergeant Stump in no way mirrored the requirements of LEOBOR, with the exception of 11 *Del. C.* § 9200 (c) related to the investigation. At no time was Sergeant Stump offered the opportunity to present evidence or to call and cross-examine witnesses. Sergeant Stump was notified of the investigative findings and recommendation for discipline on the day his discipline was imposed.

---

[3] Joint Ex. G.
[4] *Id.*

Discipline was retroactively imposed, delivered after Sergeant Stump completed at least a portion of an assigned shift. Middletown presented evidence that the Disciplinary procedures contained in the Personnel Policy manual do not apply to Middletown Police Officers.

The initial disciplinary action was approved by "Mayor and Council" of Middletown, signed by the Mayor.[5] Stump's appeal through the grievance procedure was heard by the Mayor, despite his participation in the initial disciplinary decision. Stump was never afforded an opportunity to present a case to an impartial board of officers nor members of Town Council.

## Parties Assertions

The facts alleged in the Complaint indicate Sergeant Stump was disciplined following the conclusion of an internal investigation, without the protections afforded by LEOBOR. Sergeant Stump argues he is entitled to a hearing before the CJC, as an appeal from the "final" decision rendered by the Mayor of Middletown. Sergeant Stump argues that since he was never afforded an adversarial hearing, he is entitled to one now.

Middletown takes the position Sergeant Stump was afforded sufficient due process throughout his disciplinary process. Middletown is of the opinion the

---

[5] Middletown Town Charter Section 22 States: "The word 'Council' shall be construed to mean the 'Mayor and Council' of Middletown." there is no indication "Mayor and Council" is construed to mean the Mayor individually.

internal affairs interview was consistent with that of an adversarial hearing, in that Sergeant Stump, represented by Counsel, was provided an opportunity to present his side of the story. Middletown also argues the Court's review is limited to the grievance process. Middletown's argument is that Sergeant Stump did not petition for a CJC hearing until after exhausting the grievance process, therefore the focus of this review should be whether or not the Court can mandate the CJC to hold a hearing at this time.

Middletown presented evidence that certain provisions apply to Police Officers, while others do not. Middletown argues, for example, the provision governing a demotion, requiring a written notice is to be provided to the employee at least five days before the effective date, applies to town employees generally, but does not apply to Police Officers of the Town.

Middletown argues the successive steps of the grievance procedure, as outlined by the policy manual were followed. Middletown suggests Step (a) was met during questioning by then Captain Iglio and Lieutenant Texter during the Internal Affairs investigation, Step (b) was met when then Chief Yeager notified Sergeant Stump of the investigation's findings and retroactive imposition of demotion on January 8, 2016, and the grievance process was exhausted when Sergeant Stump met with the Mayor.

Middletown argues the discipline imposed, and grievance procedure followed met all necessary requirements under LEOBOR, the CBA, and the Town's personnel policy manual. According to Middletown the investigation into Sergeant Stump's violations met with the requirements under 11 *Del. C.* §9200, and therefore the requirements of LEOBOR have been satisfied.

The CJC argues mandamus is not the correct avenue to address Sergeant Stump's grievance. The CJC, in denying Sergeant Stump's request, was under the impression Sergeant Stump received the full protection of procedural due process available under Delaware Law. The CJC argues that in the absence of a CBA, a Police Officer as defined by the statute, is entitled to the procedural protections related to an investigation and discipline afforded under 11 *Del. C.* 9200 *Et. Seq*. The CJC argues 11 *Del C.* 9200 (c) provides the framework for the investigation and questioning of a Police Officer for any reason which could lead to disciplinary action. The investigator is required to provide the findings and any recommendation for further action in writing to the Police Officer at the close of the investigation. At that time the Police Officer may accept the findings, or they are entitled to a hearing under 11 *Del. C.* 9204. The Officer may waive their right to a hearing, however any waiver must be in writing. When a hearing is required, the agency will notify the CJC. In a hearing conducted by the CJC in conformity with the statute the agency is given an opportunity to present its case, and the Officer is provided an opportunity

8

to do the same. The Officer is permitted representation, the opportunity present evidence and argument, and the opportunity to call and cross examine witnesses.

However, when the CJC receives a request for a hearing the first check is to determine the timing of the request. Under LEOBOR, a hearing must be conducted within 30 days after the conclusion of the investigation. If more than 30 days has passed since the conclusion of the investigation, the CJC cannot fulfill the obligation to provide a hearing. The CJC received Sergeant Stump's request nearly one year after he was demoted. Despite a delay due to medical reasons, this delay meant the CJC could not review the matter.

Furthermore, the CJC contends, the evidence presented indicates the parties engaged in other procedures, not laid out in either the CBA nor LEOBOR. The CJC states it was apparent the parties engaged in some other negotiated agreement, in addition to the CBA, which pursuant to § 9203 would control the conduct of a hearing without the involvement of CJC.

## Discussion

A writ of mandamus is the appropriate remedy "in all cases where the party has a right to have any thing done, and has no other specific means of compelling its performance."[6] A writ of mandamus is designed to compel the performance of an official duty if it is shown that: 1) the complainant has a clear right to the

---

[6] *Marbury v. Madison*, 5 U.S. 137, 147 (1803).

performance of the duty; 2) that no other adequate remedy is available; and 3) that the officer, tribunal, board, or agency arbitrarily has failed or refused to perform its duty.[7] Mandamus will not issue to compel the performance of a discretionary act.[8] A writ of mandamus is issuable only in the exercise of sound judicial discretion.[9]

Mandamus is a remedial writ, it does not create a duty, but rather functions to coerce the performance of pre-existing duties imposed by law, by those who neglect or refuse to perform their duties.[10]

The case as laid before the Court presents two procedures; a disciplinary procedure, and a grievance procedure. The parties' arguments have centered on the grievance procedure, and whether Sergeant Stump has a right of appeal beyond a hearing before the Mayor and Council. The right to an impartial hearing under the auspices of the CJC is not an appeal right. A CJC hearing is a right provided at the conclusion of an internal investigation. To mandate a CJC hearing the Court would be required to unwind the procedures that have already taken place.

Assuming *arguendo*, there was no CBA between the parties, Sergeant Stump would have been entitled to a hearing under the auspices of the CJC. The time for that hearing would have been in January 2016, when Sergeant Stump was notified

---

[7] *Land v. Carroll*, 810 A.2d 350 (Del. 2002).
[8] *George v. Connections Cmty. Support Programs, Inc.*, 168 A.3d 673 (Del. 2017).
[9] Victor B. Woolley, Woolley's Practice in Civil Actions §1653 (1906).
[10] *Id*.

of the findings from the internal investigation. The scheduling of a hearing and conduct of the hearing would have been dictated by §§ 9204 and 9205. If an impartial panel of Middletown officers could not be found to preside over the hearing, only then would Sergeant Stump be entitled to a hearing before a panel of officers empaneled by CJC.[11] Following the hearing the decision of the panel would be delivered including any right of appeal.[12] LEOBOR does not dictate what form that appeal must take.

However, the Police Officers for the Town of Middletown are covered by a CBA. The terms of that agreement include a disciplinary grievance procedure, therefore the terms of the agreement take precedence over LEOBOR and govern.[13] Sergeant Stump's investigation complied with the protections of LEOBOR. Following the close of the investigation, the discipline procedure of the CBA was exhausted when Sergeant Stump was advised of the disciplinary action to be taken. From that point forward Sergeant Stump's appeals fell within the grievance procedure of the CBA.

Sergeant Stump's first step in the grievance procedure should have been presented and heard by his department supervisor. The next step should have been a grievance with Sergeant Stump's department supervisor's immediate supervisor.

---

[11] See 11 *Del. C.* § 9205 (b).
[12] See 11 *Del. C.* § 9207.
[13] See 11 *Del C.* § 9203.

The final step in the grievance process is a hearing before the Mayor and Council. Beyond this final step in the process, the CBA does not provide an avenue for a subsequent appeal.

The Court cannot grant a writ to compel the CJC to convene a hearing as an appeal from the decision of the Mayor. Middletown is correct in that assertion. In order to mandate a hearing before a panel of officers convened under the auspices of the CJC, this Court would be required to unwind the process back to the completion of the internal affairs investigation. The Delaware Courts have repeatedly indicated mandamus is a proper remedy for violations of LEOBOR, but the power of this Court to declare the proceedings void, and compel the CJC to conduct a hearing is beyond the permissible scope of mandamus.

The Town's Personnel Policy Manual states a final grievance is to be filed with the Mayor and Council, and a hearing shall be scheduled thereafter. The manual does not dictate the procedure of that hearing. While the meeting with the Mayor may have been inadequate, the guidelines for proceedings in the final step of the grievance policy are not prescribed with such precision and certainty that nothing is left to discretion or judgment.

Reviewing the facts presented in their entirety, there is no clear legal or ministerial duty this Court may compel. Thus, for the reasons set forth above, the Court declines to exercise jurisdiction over the matter pursuant to a writ of mandamus.

**IT IS SO ORDERED.**

/s/ Calvin L. Scott
**Judge Calvin L. Scott, Jr.**